Lisa S. Kantor, Esq., SBN 110678
 E-mail: lkantor@kantorlaw.net
Timothy J. Rozelle, Esq., SBN 298332
 E-mail: trozelle@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff,
KENNETH GOSS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KENNETH GOSS,<br><br>          Plaintiff<br><br>     v.<br><br>ZIMMER HOLDINGS, INC. HEALTH AND WELFARE PLAN,<br><br>          Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>**BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; PENALTIES; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, KENNETH GOSS, herein sets forth the allegations of his Complaint against Defendant ZIMMER HOLDINGS, INC. HEALTH AND WELFARE PLAN.

**PRELIMINARY ALLEGATIONS**

1. Jurisdiction – This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 ("ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the

1
COMPLAINT

terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under the employee benefit plan. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

2. Plaintiff, Kenneth Goss, is and was at all relevant times, a resident of the State of California, County of Riverside.

3. Defendant Zimmer Holdings Inc. Health and Welfare Plan (the "Plan") is an employee welfare benefit plan regulated by ERISA. At all relevant times, Plaintiff was a participant in the Plan and his son (Identification No.: UHZAN4680478; DOB: 10/14/2000) was a covered beneficiary under the Plan.

4. Plaintiff is informed and believes that the Plan is administered by Anthem BlueCross BlueShield ("Anthem BCBS"). Plaintiff is informed and believes that Anthem BCBS is a corporation with its principal place of business in the State of Indiana.

## FIRST CAUSE OF ACTION
## FOR DENIAL OF PLAN BENEFITS UNDER ERISA

5. Plaintiff refers to and incorporates by reference paragraphs 1 through 4 as though fully set forth herein.

6. Plaintiff's son is currently a 16-year-old young man who was diagnosed with Pervasive Developmental Disorder ("PDD"), Dysthmia, Oppositional Defiant Disorder and and Attention-Deficit/Hyperactivity Disorder ("ADHD").

7. The earliest issues with the child's behavioral health surfaced when he was 18 months old. Whenever he became frustrated with something that became difficult—change in activity or surroundings or a "no" from a parent—he would repeatedly bang his head on the floor. These episodes were quite severe in intensity and led to the formation of large welts and bruises on his forehead.

8. Beginning at the age of 3, the child exhibited explosive rage attacks and acts of defiance both in school and at home. Such outbursts and behaviors were normally disproportionate to the incidents which triggered them and sometimes led to hitting of siblings and damage to objects and property.

9. Between the ages of 3 and 12, the child received therapy from outpatient psychologists. He was treated with an array of medications, including Adderall, Prozac and Risperdal, to name a few. His behaviors gradually worsened leading to belligerent and defiant outbursts against his teachers, refusing to do school work or bathe or brush his teeth.

10. The child's state of mind and condition deteriorated so much that he was exhibiting apathy, hopelessness, worthlessness, irritated mood, lack of motivation, depression, defiance, and engaging in verbal and physical altercations with his parents.

11. Beginning in April 2013, the child began visiting Elizabeth J. Roberts, M.D., a renowned psychiatrist who was specially trained and experienced to treat individuals with the child's profile.

12. Despite medication adjustments and repeated sessions with therapists, the child's behavior remained out of control. In the Fall of 2013, he began hitting his father and was suspended from school.

13. Between October 2013 and January 2014, the child visited the Drake Institute of Behavioral Medicine in Irvine, California, roughly three times a week.

14. The child's parents paid entirely out of pocket, with no insurance coverage, for brain mapping and therapeutic sessions. Despite this treatment, the child continued to refuse to attend school, became increasingly violent, completely defiant, and showed signs of growing depression, hostility and alienation from his family.

15. On January 1, 2014, the child tried to slit his wrist with a butcher knife after setting a fire in the common grounds of the subdivision in which his

parents' home was located. The child was immediately hospitalized on a 5150 Hold at Loma Linda Hospital in the children's psychiatric unit from January 1, 2014 to January 7, 2014.

16. The child began attending an intensive outpatient program ("IOP") at Loma Linda from January 7, 2014 to February 3, 2014. He refused to attend therapy sessions, walked out of family therapy, refused to attend school or do his school work and resisted transportation to the IOP program by refusing to get in his parents' car.

17. On February 4, 2014, with no other viable recourse, the child was admitted to Oxbow Academy ("Oxbow") in Mount Pleasant, Utah for residential treatment.

18. Upon admission to Oxbow, the child was diagnosed with PDD, Dysthymia, Oppositional Defiant Disorder and ADHD. He received family therapy, individual psychotherapy, group therapy, psychiatric evaluations, and psychosocial assessments.

19. On April 14, 2014, a report written by Elizabeth J. Roberts, M.D., a psychiatrist who was treating the child up until his admission at Oxbow, explained the rationale for recommending that the child be placed in and remain in residential treatment:

> In spite of years of therapy and a number of different medications, he continued to have violent assaultive anger outbursts.
>
> . . .
>
> By late January 2014, [the child's] mother reported that he was still deeply unhappy and angry. He reported to her that he was having violent fantasies when he got angry. He was hitting both of his parents and all three siblings when he had his rages.
>
> . . .

It was at this point that the family had no other recourse than to find a higher level of care.

20. On February 17, 2014, Anthem BCBS approved coverage for nine days of residential treatment between February 17, 2014 and February 25, 2014.

21. On March 11, 2014, Anthem BCBS approved coverage for additional dates of service for the child at Oxbow, from February 26, 2014 through March 6, 2014. However, Anthem BCBS denied coverage for any dates of service beyond March 6, 2014, stating that treatment at Oxbow was no longer medically necessary:

> We cannot approve this request because this type of care is not medically necessary at this time. The doctor taking care of you and the residential program told us you went there for inability to control your behavior. The report shows you cannot control these actions all the time. It also shows you have a history of getting angry easily. Your current care has not changed your status. Therefore, you may do better with another type of care and you need to discuss options with your doctor. We know this is not an easy time for you. But there are other treatment options that offer support services to help you work on your issues. You can also be treated with outpatient services. This decision is based on our health plan guidelines. (Psychiatric Disorder Treatment - Residential Treatment Center (RTC) (CGBEH-03).

22. On June 13, 2014, Plaintiff appealed Anthem BCBS's denial, responding point-by-point to Anthem BCBS's bases of denial:

> As you can see, this denial reasoning states that [the child] had not improved after 30 days of treatment that Anthem deemed medically necessary, he therefore was able to be treated at an outpatient facility. This does not correlate to the Anthem Behavioral Health Medical Necessity Criteria.

5
COMPLAINT

> . . .
>
> As you can see, it is a requirement for patient in outpatient therapy to be able to assume responsibility for behavioral change. It is obvious that Anthem does not believe that [the child] was not able to do that. It seems that due to the fact that [the child] was not able to comply with treatment that he would more likely need a higher level of care, not a lower level of care.
>
> . . .
>
> In the Psychiatric Acute Inpatient 2014 Criteria, it states the following requirement for continued stay:
>
>> 'If voluntary, the Covered Individual is cooperating with treatment; if the Covered Individual is involuntary and not cooperating with treatment, the provider has acted in a timely fashion to get legal permission to treat the symptoms/behaviors that required admission'
>
> Only in this level of care is the covered individual able to be involuntarily involved in not cooperating in treatment. Therefore, Anthem's conclusion that [the child] was not improving meant that he could be transferred to a lower level of care to outpatient treatment is clinically unfounded and entirely untrue. These conclusions go directly against the Anthem Behavioral Health Medical Necessity Criteria.

23. On July 13, 2014, Anthem upheld its original denial of continued treatment at Oxbow, seemingly doubling down on the illogic of its initial decision to deny further treatment:

> Based on the review by Anthem's Physician Consultant who specializes in Psychiatry, We [sic] cannot approve this request as of March 6, 2014 because this type of care is not medically necessary at

this time. The doctor taking care of you and the residential program told us you went there for Oppositional Defiant Disorders. The report shows you cannot control these actions all the time. It also shows you have a history of getting angry easily. ***Your current care has not changed your status. Therefore, you may do better with another type of care and you need to discuss options with your doctor.*** We know this is not an easy time for you. But there are other treatment options that offer support services to help you work on your issues. You can also be treated with outpatient services. This decision is based on our health plan guidelines (Psychiatric Disorder Treatment - Residential Treatment Center (RIC) (CG-BEH-03).

24. On August 25, 2014, Plaintiff completed and submitted to the California Department of Insurance (CDI) a Request for Independent Medical Review (or "External Review").

25. On October 31, 2014, an External Review was completed by Advanced Medical Reviews, Inc., an independent review organization (IRO), which upheld Anthem BCBS' denial by inexplicably applying the 2013 Milliman Care Guidelines (MCG). These guidelines are completely irrelevant and could not be applied to a review of the child's claim for continued residential care at Oxbow. Such guidelines do not represent the standard of care in the medical community for the residential behavioral health treatment of children and adolescents. Furthermore, the External Review does not contain the name or any identifying information for the medical reviewer who allegedly reviewed the child's medical records and applied the MCG.

26. On June 9, 2015, Anthem BCBS informed Plaintiff that he had been provided with incorrect information on October 2, 2014 with regard to his available appeal rights under the terms of his health plan. Plaintiff was entitled to a voluntary second level appeal which he had not otherwise been prior informed of

as an appeal option. Plaintiff was given 60 calendar days to submit a voluntary second level appeal.

27. On August 5, 2015, Plaintiff submitted to Anthem BCBS all available treatment and medical records from Oxbow, along with all other supporting documentation which had been previously provided to Anthem BCBS in its consideration of the child's original request for coverage and first level appeal.

28. On December 16, 2015, the child was discharged from Oxbow.

29. On January 8, 2016, Anthem BCBS denied Plaintiff's voluntary second level appeal, providing the following rationale for its decision:

> Based on the review by Anthem's Medical Director who is board certified in Psychiatry, you went to residential treatment for your mental health condition and your stay was approved. A request was made to extend your stay. The plan clinical criteria consider ***short-term residential treatment*** medically necessary for those who meet certain criteria and improvement can be expected from a short-term residential stay. The information we received after your stay was approved shows the program you are in is planned for a long time. ***A program of this length is not considered short term residential treatment***. ***For this reason, the request for you to remain in this long-term residential treatment program is denied as not medically necessary.*** There may be other options to help you work through the issues you're dealing with, such as short-term residential treatment or outpatient services. We encourage you to discuss other treatment options with your doctor. It may help your doctor to know we reviewed this request using the plan clinical guideline called Psychiatric Disorder Treatment - Residential Treatment Center (RTC) CG-BEH-03.

///

30. On May 2, 2016, Plaintiff submitted post-service claims to Anthem BCBS encompassing claims for all dates of service, March 6, 2014 through December 16, 2015.

31. Plaintiff made several calls to Anthem BCBS inquiring about the status of the post-service claims.

32. Finally, on September 9, 2016, Anthem BCBS confirmed that it was upholding its decision to deny all of the child's treatment at Oxbow from March 6, 2014 to discharge on December 16, 2015.

33. Plaintiff paid for the cost of the child's treatment at Oxbow Academy.

34. Defendant wrongfully denied Plaintiff's claim for treatment at Oxbow Academy, in the following respects, among others:

(a) Failure to authorize and pay for medical services rendered to Plaintiff as required by the Plan at a time when Defendant knew Plaintiff was entitled to said benefits under the terms of the Plan;

(b) Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of Plaintiff's claims for medical benefits;

(c) Failure to provide sufficient and accurate information relating to a voluntary level of appeal to enable the claimant to make an informed judgment about whether to submit a benefit dispute to the voluntary level of appeal;

(d) After Plaintiff's claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect his claim along with an explanation of why such material is or was necessary;

(e) Failure to properly and adequately investigate the merits of Plaintiff's medical claims and/or provide alternative and medically appropriate courses of treatment;

(f) Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R.§2560.501-1(h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the medical judgment; and

(g) Failure to thoroughly and independently evaluate both Plaintiff and his medical records prior to issuing their denials of Plaintiff's claim and his appeals.

35. Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied Plaintiff's claims for medical benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

36. Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

37. As a proximate result of the denial of medical benefits due Plaintiff, Plaintiff has been damaged in the amount of all of the medical bills incurred for the child's treatment, in a total sum to be proven at the time of trial.

38. As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

39. Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce his rights under the terms of the Plan.

## SECOND CAUSE OF ACTION
## FOR EQUITABLE RELIEF

40. Plaintiff refers to and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

41. As a direct and proximate result of the failure of the Defendant to pay claims for medical benefits, the failure to provide a full and fair review, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

    (a) Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate;

    (b) Striking of the external review from the administrative record; and

    (c) Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff under the Plan.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. Payment of health care benefits due to Plaintiff under the Plan;
2. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;
3. Payment of prejudgment and post judgment interest as allowed for under ERISA; and
4. For such other and further relief as the Court deems just and proper.

DATED: December 1, 2016    KANTOR & KANTOR, LLP

BY: */s/ Lisa S. Kantor*
Lisa S. Kantor
Timothy J. Rozelle
Attorneys for Plaintiff
KENNETH GOSS